1
2
3
4
5
6
7
8
9
10

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| BAO YI YANG; WEI WANG; and LIANG XIAN FU, | Case No. 07-cv-04482 NC |
| Plaintiffs, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING SECOND BENCH TRIAL** |
| v. | |
| SHANGHAI GOURMET, LLC, dba SHANGHAI GOURMET; XU LIANG SHEN; and BO JUAN LIU, | |
| Defendants. | |

## I. BACKGROUND

In this suit by restaurant employees against their former employer, Shanghai Gourmet, and its owners Xu Liang Shen and Bo Juan Liu, the employees seek damages for Shanghai Gourmet's failure to pay overtime wages as required by federal and state law.

This case has been tried twice and the parties have been unable to resolve their dispute by settlement. After the first trial, the district court entered judgment for defendants on all claims. On appeal, the Ninth Circuit Court of Appeals affirmed the judgment in part, reversed in part, and remanded for further proceedings. This order sets forth findings of fact and conclusions of law after the second bench trial and requests additional briefing.

The operative complaint is the First Amended Complaint. Dkt. No. 35.[1] Plaintiffs' claims are for: (1) violation of California Labor Code § 510 and § 1194 for non-payment of overtime; (2) violation of the federal Fair Labor Standards Act (FLSA) for non-payment of overtime; (3) failure to provide meal and rest periods in violation of California Labor Code § 226.7; (4) "waiting time" penalties for failure to pay wages due at time of termination under California Labor Code § 203; (5) restitution of unpaid wages in violation of the California Unfair Trade Practices Act, Business and Professions Code § 17203; and (6) fraudulent conveyance under California Civil Code § 3439.04 and § 3439.05. Dkt. No. 35.

The case was first tried before Magistrate Judge James Larson in 2010. After the first bench trial, Judge Larson entered judgment in favor of defendants, finding "for Defendants as to all causes of action by all Plaintiffs." Dkt. No. 104 at 2. Specifically, Judge Larson found that "even if Plaintiffs Wang and Yang had worked 12-hour days six days a week during their employment with Defendants, they were fairly compensated for all regular time and overtime under the federal Fair Labor Standards Act and the California Labor Code." *Id.* The Court also found that plaintiff Fu "agreed to an hourly wage and a minimum monthly guarantee and was paid according to the terms he agreed to, with no violation of either state or federal wage and hours laws." *Id.*

On appeal, the Ninth Circuit affirmed in part, reversed in part, and remanded. Dkt. No. 113. The Ninth Circuit affirmed Judge Larson's interpretation of California's meal period requirement. *Id.* at 7. But the Ninth Circuit found that Judge Larson misapplied the burden shifting analysis of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), and erroneously relied on Wang's and Yang's pay stubs to determine their rates of pay and how many hours they worked. Dkt. No. 113 at 3-5. The Ninth Circuit remanded for this Court to determine: (1) the overtime pay due to Wang and Yang under FLSA; (2) the overtime pay due to Wang and Yang under California law; and (3) the appropriate

---

[1] Judge Larson denied plaintiffs' motion for leave to file a Second Amended Complaint that would have added claims for penalties under California Labor Code § 558, the Private Attorney General Act. *See* Dkt. No. 104, First Bench Trial, at 3-4, discussing denial of Second Amended Complaint.

1
2
compensation due to Fu for the time period between August 2003 and August 2004. *Id.* at 3-7.

3
4
5
6
7
8
9
The Ninth Circuit ordered this Court to establish the overtime pay due under the FLSA for Wang and Yang by determining their regular rates of pay by dividing their weekly salaries including the value of room and board provided to them, by the total number of hours that they worked each week. *Id.* at 3. As to plaintiffs' California overtime claims, the Ninth Circuit ordered this Court to divide Wang's and Yang's weekly salaries by forty hours to calculate their regular rates of pay under California law, and then to reassess their unpaid overtime on the basis of these hourly rates. *Id.* at 4.

10
11
12
13
14
15
16
17
18
This Court held a second two-day bench trial on December 10 and 11, 2012. A certified Mandarin interpreter was present during all phases of the trial. During the second trial, plaintiffs Wang and Yang testified that they regularly worked at Shanghai Gourmet six days per week and twelve hours per day without receiving overtime pay. Defendants, through testimony from owner Shen, argued that plaintiffs generally worked six days per week but for eight hours per day and that each plaintiff was paid a monthly minimum that covered any overtime worked. Defendants further asserted that pay stubs provided as evidence to the Court correctly demonstrated the hourly wage paid to each plaintiff and the number of hours worked.

19
20
21
22
23
24
On balance, the Court finds that plaintiffs worked some overtime hours for which they were not properly compensated, but that each plaintiff's testimony was inconsistent about the number of hours he worked. Specifically, each plaintiff's testimony differed between the first and second trials as to time of meal periods, breaks allowed during the day, the hours of restaurant operation, and plaintiffs' arrival and departure times from the restaurant.

25
26
27
28
On the other hand, the Court does not find the testimony of defendant Shen, owner of Shanghai Gourmet, to be entirely credible. In particular, the Court does not find believable Shen's continued assertions that accurate accounting of his employees' time was recorded on their pay stubs.

1   With this background, the Court makes the following findings of fact and conclusions

2   of law under Federal Rule of Civil Procedure 52.

3   **II. FINDINGS OF FACT**

4   **A.   Plaintiff Wang's Work Schedule**

5   Plaintiff Wang worked for Shanghai Gourmet from April 2000 through July 2006.

6   Tr. 17:19, 19:23-25, 51:12-14, Dkt. Nos. 151, 152.[2]  Wang testified that he worked at the

7   Walnut Creek Shanghai Gourmet restaurant from April through May 2000 and then in the

8   Richmond Shanghai Gourmet restaurant until July 2006.  Tr. 17:19-23.

9       **1.   Weekly Work Schedule**

10  Wang testified that he worked six days per week, with one day off (Monday for

11  Walnut Creek; Tuesday for Richmond).  Tr. 17:24-18:1, 19:21.

12      **2.   Daily Schedule**

13  Wang testified that on four days per week (Monday/Tuesday, Wednesday, Thursday,

14  Sunday) he arrived at work at 10:00 a.m. and worked until 10:00 p.m.  Tr. 18:2-12.  On

15  Fridays and Saturdays, he testified that he worked from 10:00 a.m. until 10:30 p.m.  Tr.

16  18:1-8.

17  Wang testified that at the Richmond restaurant he would arrive at work at 10:00 a.m.

18  and, though the restaurant would close at 9:30 p.m., he would not leave until 10:00 p.m.  Tr.

19  18:17-21.  Wang stated that he would have his breakfast around 10:15 a.m.  Tr. 40:20-22.

20  He also testified that he would eat breakfast at the restaurant for about 10 minutes and then

21  would continue to work.  Tr. 24:15-25.  Wang testified that customers started arriving at the

22  restaurant at 11:00 a.m.  Tr. 24:2-4.  Wang testified that lunch for employees was provided

23  from 2:30 p.m. to 3:00 p.m. each day and that he would complete his meal in 10 to 15

24  minutes.  Tr. 25:17-25, 44:14-17.  Wang testified that unlike some of the other workers at

25  the restaurant, he was required to work between 3:00 p.m. and 5:00 p.m. because he was the

26

27  _____

[2] Although the trial transcript comprises two separate docket entries, all pages of the transcript are numbered consecutively.  *See* Dkt. No. 151 (Dec. 10 proceedings, at 1-103); Dkt. No. 152 (Dec. 11

28  proceedings, at 104-197).  Accordingly, references made to the transcript in this order are to that consecutive pagination.

only "ingredient person." Tr. 45:12-22.  This contradicts his prior trial testimony in which he stated "From 3:00 to 5:00 there was one hour or two hours that was my own time.  I could go out whatever I want, but I didn't." Tr. 46:17-19.  Wang further testified that on Monday through Thursday he worked from 5:00 p.m. to 9:30 p.m. at which time he would eat dinner at the restaurant.  Tr. 30:16-22.  Wang testified that he would eat his dinner in 10 to 15 minutes and then he would continue to work until he left the restaurant at 10:00 p.m. Tr. 31:3-15.

Wang testified that on Fridays and Saturdays, he would arrive at work at 10:00 a.m. and, because the restaurant closed at 10:00 p.m. those days, he would not leave until 10:30 p.m. Tr. 31:18-19, 56:10-12.  On Fridays and Saturdays, Wang would not eat dinner until 10:00 p.m. and would leave the restaurant at 10:30 p.m.  Tr. 31:16-23.  Wang did not work on the days when the restaurant was closed.  Tr. 18:20-21.

Wang's testimony was contradicted by Shen's testimony and a business card stating the hours of the Richmond restaurant as 11:00 a.m. to 9:30 p.m. daily.  Tr. 56:7, trial Ex. D. Defendant Shen further testified that employees at the Richmond restaurant were required to arrive at work at 11:00 a.m.  Tr. 165:23-25.  Shen did not know the exact time Wang or Yang arrived at work but made clear to all employees that business hours began at 11:00 a.m. and that employees could come at 10:30 a.m. "to have breakfast on their own time." Tr. 167:11-17.

Shen testified that employees at the Walnut Creek restaurant were required to arrive at work at 11:30 a.m., the time the restaurant opened, but could arrive early at 11:00 a.m. to eat breakfast.  Tr. 168:13-14.

### 3.    Position and Pay

When he was first hired by defendants in April 2000, Wang worked as a dishwasher, making $1,300 per month.  Tr. 22:12-16, 33:15.  Wang's salary was increased to $1,500 per month in May 2000.  Tr. 160:25-161:6, 161:24-162:1.  As of July 2003, upon receiving his immigration status, Wang worked as an "ingredient person" and started making $2,300 per month.  Tr. 22:16-17, 58:4-5, 67:22-24.

### 4. Accommodations

Wang lived in a dormitory provided by defendants from his start date in 2000 through August 2003. During that time, Wang paid no rent and was provided meals and transportation to and from work. Tr. 23:1-6, 23:9-20. The parties stipulated that the value of this room and board was $1,100 per month. Tr. 139:21-140:18. Wang lived in defendants' quarters until approximately August 2003; at that time he obtained his own housing and car, which he drove to work. First Trial Tr. 7/20/2010, at 147:15-22, Dkt. No. 98.

## B. Plaintiff Yang's Work Schedule

Plaintiff Yang worked at the Richmond Shanghai Gourmet restaurant from September 2000 through March 2005. Tr. 134:8-9, 134:13-14, 139:7-9, Dkt. No. 152. Yang took ten months off from work commencing in November 2000, then returned. Tr. 134:22-135:1.

### 1. Weekly Work Schedule

Yang testified he worked six days per week from 10:00 a.m. to 10:00 p.m. at the Richmond restaurant. Tr. 139:12-14, 147:9-11.

### 2. Daily Schedule

Yang testified that he would arrive at work at 10:00 a.m. Tr. 135: 9-11. Yang testified that breakfast was served sometime between 10:00 a.m. and 10:30 a.m. Tr. 136:23-24. Prior to breakfast, Yang cleaned the bathroom, then prepared and cooked the rice, and finished the dishes left over from the night before. Tr. 137:1-5. He testified that he then took 10 minutes to eat his breakfast and then completed "general helper" tasks, including chopping vegetables and putting rice in the rice container, until dishes started coming in around noon. Tr. 137:9-18.

Yang testified that he was provided lunch between 2:30 p.m. and 3:00 p.m. Tr. 137:19-20. From 3:00 p.m. to 5:00 p.m. Yang testified that, although he had no specific tasks to complete, he was not free to leave the restaurant due to his status as a driver of the company car. Tr. 137:21-138:8. During this time, Yang testified that, at most, he would be free to stay in the car and read the paper. Tr. 138:15-16. During cross-examination, Yang

testified that from 3:00 p.m. to 5:00 p.m. he would occasionally take naps in the car.  Tr. 141:6-9.  As a driver of the company car, Yang testified that on occasion he would have to pick up and load supplies or sometimes he would have to go and buy seafood.  Tr. 138:4-10.  Defendant Shen testified that he did not control what Yang did with his time from 3:00 p.m. to 5:00 p.m. as that was a break time.  Tr. 172:19-20, 173:9-10.

Yang testified that he worked from 5:00 p.m. to 9:30 p.m. at which time he would have dinner.  Tr. 138:21-22.  Yang testified that after dinner, he would clean up the bathrooms and hallway and kitchen floors and wash any remaining dishes prior to leaving the restaurant after 10:00 p.m. to return to the dormitories.  Tr. 138:24-139:6.  Defendant Shen testified that it was not necessary for employees to work after the 9:30 p.m. dinner.  Tr. 179:19-21.

### 3.    Position and Pay

When he was first hired by defendants, Yang worked as a dishwasher, making $1,300 per month.  Tr. 134:15-16, 135:2-3.  Yang's pay of $1,300 per month did not increase during his employment.  Tr. 139:15-17.

### 4.    Accommodations

Yang lived in a dormitory provided by defendants from his start date in 2000 through his end date in March 2005.  During that time, Yang paid no rent and was provided meals and transportation to and from work.  Tr. 23:1-6, 23:9-20.  The parties stipulated that the value of room and board was $1,100 per month.  Tr. 139:21-140:18.

## C.    Plaintiff Fu's Work Schedule

Plaintiff Fu worked for defendants from 1996 through November 2006.  Tr. 80:3-5, 82:8-9.  Fu testified at trial that he worked at the Walnut Creek restaurant starting in 2000.  Tr. 81:15-17, 82:4-7.

### 1.    Weekly Work Schedule

Prior to his stroke suffered in 2005, Fu testified he worked six days per week from 10:00 a.m. to 10:00 p.m. at the Walnut Creek restaurant.  Tr. 95:15-18.  In late November 2005, Fu suffered a stroke.  Tr. 95:23-25.  After the stroke, Fu took two months off from

work.  Tr. 96:17-19.  At that time, Fu returned to work for three days a week.  Tr. 96:20-23.
After two weeks on this schedule, his work days were further reduced to two days a week,
and then in November 2006 his time was reduced to one day per week.  Tr. 96:22-97:3.
After one month of working one day per week, in early December 2006 he returned to
China.  Tr. 97:4-9.

### 2.  Daily Schedule

Fu testified that he would arrive at work at the Walnut Creek restaurant at 10:00 a.m.
Tr. 83:16.  Upon arrival, Fu testified that he would first sort pastry products that were to be
packaged and put in the freezer for later sale.  Tr. 85:17-86:25.  Fu testified that breakfast
was served around 10:30 a.m. and that it took him 10 minutes to eat breakfast.  Tr. 90:17-
25.  After breakfast, Fu testified that he would start to make dim sum.  Tr. 91:1-3.  On
cross-examination, Fu was uncertain whether the restaurant opened at 11:00 a.m. or 11:30
a.m.  Tr. 115:20-22.  Shen testified that the Walnut Creek restaurant opened at 11:30 a.m.
and if employees wanted a free breakfast they were welcome to come in at 11:00 a.m. prior
to beginning work at 11:30 a.m.  Tr. 168:6-14.

Fu testified that he would take lunch sometime between 2:30 p.m. and 3:00 p.m. and
that he would eat his meal in 15 minutes.  Tr. 91:7-9, 91:23-25.  He later testified it took
him around 10 minutes to complete his lunch.  Tr. 92:24-25.

From 3:00 p.m. to 5:00 p.m. Fu continued to make dim sum and if he stopped for a
break, he would be unable to use the dough he mixed for that day.  Tr. 93:13-16.  On cross-
examination, Fu testified that he would continue to make dim sum from 5:00 p.m. until the
close of business at 9:30 p.m.  Tr. 93:17-22.  Dinner was provided at 9:30 p.m. and Fu
would finish his dinner in 10 minutes.  Tr. 93:24-94:3.  After dinner, Fu made preparations
for the fillings for the next day's dim sum, including chopping onions and ginger and
defrosting meat.  Tr. 94:4-9.  Fu testified that he usually left work after 10:00 p.m.  Tr.
94:18-20.  When asked whether he had to wait until the front of the restaurant was cleared
of customers prior to leaving, Fu answered that was not necessary for kitchen workers.  Tr.
119:25-120:4.  This testimony was contradicted by his previous trial testimony in which he

1  stated that the kitchen workers would have to wait for customers to leave prior to leaving.

2  Tr. 120:5-13.

3      Shen testified that Fu would work on rotation between 3:00 p.m. and 5:00 p.m. and

4  that when he was required to work during that time, he would be compensated extra in cash.

5  Tr. 178:11-21.

6      **3.    Position and Pay**

7      During the relevant time period of August 2003 through August 2004, Fu worked as a

8  pastry chef making dim sum.  Tr. 82:10-13.  Fu's monthly guaranteed wage was $2,500.

9  Tr. 82:10-13, 85:13-16.

10      **4.    Accommodations**

11      During the relevant time period, Fu lived in a dormitory provided by defendants.  Tr.

12  82:10-23.  During that time, Fu paid no rent and was provided meals and transportation to

13  and from work.  Tr. 82:14-83: 5.  The parties stipulated that the value of room and board

14  was $1,100 per month.  Tr. 139:21-140:18.

15  **III. CONCLUSIONS OF LAW**

16  **A.    Jurisdiction**

17      This Court has original jurisdiction over this action under the FLSA, 29 U.S.C. § 210,

18  *et seq.*, and supplemental jurisdiction over plaintiffs' California law claims.  Jurisdiction is

19  also proper based on the remand order made by the United States Court of Appeals for the

20  Ninth Circuit.  28 U.S.C. § 2106.   Additionally, all parties consented to the jurisdiction of a

21  magistrate judge under 28 U.S.C. § 636(c).

22      The questions determined on appeal become the law of the case as to subsequent

23  proceedings.  *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 573 (9th Cir.

24  2005).  This Court's duty as directed by the Ninth Circuit is to consider the evidence

25  presented and to make findings consistent with the remand order as to the hours worked,

26  rates of pay, and the amounts due to plaintiffs.

27  *//*

28

1  **B.     Liability Under the FLSA and California Law**

2     **1.     Overtime Pay**

3         The FLSA provides: "[N]o employer shall employ any of his employees . . . for a

4  workweek longer than forty hours unless such employee receives compensation for his

5  employment in excess of [forty hours] at a rate not less than one and one-half times the

6  regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  An employee bringing an

7  overtime claim under the FLSA has the burden of proving that he performed work for

8  which he was not properly compensated.  *Anderson v. Mt. Clemens Pottery*, 328 U.S. 680,

9  686-87 (1946).  This burden, however, is not meant to be an "impossible hurdle" for the

10  employee and "where the employer's records are inaccurate or inadequate and the employee

11  cannot offer convincing substitutes . . . the solution . . . is not to penalize the employee by

12  denying him any recovery on the ground that he is unable to prove the precise extent of

13  uncompensated work."  *Brock v. Seto*, 790 F.2d 1446, 1448 (9th Cir. 1986).

14         "[A]n employee has carried out his burden if he proves that he has in fact performed

15  work for which he was improperly compensated and if he produces sufficient evidence to

16  show the amount and extent of that work as a matter of a just and reasonable inference."  *Id.*

17  The burden then shifts to the employer to show the precise number of hours worked or to

18  present evidence sufficient to negate "the reasonableness of the inference to be drawn from

19  the employee's evidence."  *Id.*  If the employer fails to make such a showing, the court

20  "may then award damages to the employee, even though the result be only approximate."

21  *Id.*  "[A]n award of back wages will not be barred for imprecision where it arises from the

22  employer's failure to keep records as required by the FLSA."  *Id.*; *see also Hernandez v.*

23  *Mendoza*, 199 Cal. App. 3d 721, 726-27 (1988) (applying standard set forth in *Brock* in

24  connection with California Labor Code claim).

25         In this case, plaintiffs have established that they performed some work for which they

26  were not properly compensated and presented sufficient evidence to show the amount and

27  extent of that work as a matter of a just and reasonable inference.  While plaintiffs did not

28  prove that they routinely worked twelve hours a day as they claim or that they were

forbidden from leaving the premises during their breaks, they did establish that they were required to be at work for more than forty hours per week and that they were not always relieved of duties during designated break times.

Defendants have not met their burden of showing the precise number of hours worked and have not presented evidence sufficient to negate the reasonableness of the inference to be drawn from plaintiffs' evidence.  In fact, the Ninth Circuit found the hourly rates listed on plaintiffs' pay stubs were insufficient to show their explicit agreement to be paid at those rates.  The Ninth Circuit therefore ordered this Court to reassess the FLSA overtime due to Wang and Yang by calculating their regular rates of pay by "dividing their weekly salaries, including the value of the room and board provided to them, by the total number of hours that they worked each week."  Dkt. No. 113 at 3.

As for plaintiffs' claims under California law, the California Labor Code § 510 provides that: "Eight hours of labor constitutes a day's work.  Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." As to plaintiffs' California claims, the Ninth Circuit advised the district court to divide Yang's and Wang's weekly salaries by forty hours to calculate their regular rates of pay under California law, and to reassess their unpaid overtime on the basis of these hourly rates. Dkt. No. 113 at 4.

To calculate overtime pay due under the California Labor Code, § 515(d) instructs that for a nonexempt full-time salaried employee, the regular hourly rate is one-fortieth of the employee's weekly salary.  "Absent an *explicit, mutual* wage agreement, a fixed salary does not serve to compensate an employee for the number of hours worked under statutory overtime requirements."  *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 725 (1988).  When calculating overtime compensation due to a salaried employee, his "regular rate of pay" must be computed by dividing the total weekly salary by no more than forty hours, regardless of the number of hours actually worked.  *Ghory v. Al-Lahham*, 209 Cal. App. 3d

1487, 1490 (1989); *see also Espinoza v. Classic Pizza, Inc.*, 114 Cal. App. 4th 968, 973 (2003) (overtime hours are not to be used in computing the regular rate of pay).

The Ninth Circuit found that because Wang and Yang never explicitly agreed to an hourly wage before their work was performed, the district court could not properly rely on the hourly rates listed on their pay stubs. Accordingly, the Ninth Circuit directed this Court to divide Yang's and Wang's weekly salaries by forty hours to calculate their regular rates under California law. At trial, defendants continued to insist that the employee pay stubs were accurate, but this argument was contradicted by the testimony of the employees.

With this background, the Court finds as to each plaintiff as follows:

### a. Wang's Overtime Pay

The Court finds that Wang worked six days per week and more than eight hours per day while he was employed by Shanghai Gourmet. The Court gives no weight to the pay stubs offered by defendants, which reflect that Wang worked only eight hours per day. Dkt. No. 113 at 4. The Court, however, does not find Wang's trial testimony entirely consistent or credible. Thus, while damages for failure to pay overtime are warranted, these damages must necessarily be approximated. The Court determines Wang's overtime pay as follows:

Wang typically arrived at work at 10:00 a.m. and would have breakfast from 10:30 a.m. to 11:00 a.m. He would then work from 11:00 a.m. to 2:30 p.m. at which point he would have a lunch break from 2:30 p.m. to 3:00 p.m. He would be on duty from 3:00 p.m. to 5:00 p.m. At 9:30 p.m. the restaurant would close and Wang would have a dinner break from 9:30 p.m. to 10:00 p.m. At 10:00 p.m. Wang would leave for the night. Wang worked six days per week on this schedule.

According to this schedule, the Court finds that Wang worked a total of 10.5 hours per day, six days per week. The Court finds that Wang is therefore entitled to 23 hours of overtime pay for each week that he worked for Shanghai Gourmet within the actionable time period.

Wang's monthly salary during the relevant time period, including the value of room and board, is calculated as follows: $1,100 in room and board per month + $2,300

1    guaranteed salary per month = $3,400 per month.

2        Based on these facts and the provisions of 29 C.F.R. § 778.113(b),[3] the Court finds

3    that Wang's hourly regular rate of pay under the FLSA was $12.45.[4]

4        Under California law, the Court calculates Wang's regular rate of pay at $19.61.[5]

5                           **b. Yang's Overtime Pay**

6        The Court finds that Yang worked six days per week and more than eight hours per

7    day while he was employed by Shanghai Gourmet.  The Court again gives no weight to the

8    pay stubs offered by defendants, which reflect that Yang worked only eight hours per day.

9    *See* Dkt. No. 113 at 4.  The Court, however, does not find Yang's trial testimony entirely

10   consistent or credible.  Thus, while damages for failure to pay overtime are warranted, these

11   damages must necessarily be approximated.  The Court determines Yang's overtime pay as

12   follows:

13       Yang typically arrived at work at 10:00 a.m. and would have breakfast from 10:30

14   a.m. to 11:00 a.m.  He would then work from 11:00 a.m. to 2:30 p.m. at which point he

15   would have a lunch break from 2:30 p.m. to 3:00 p.m.  As for the 3:00-5:00 p.m. break, the

16   Court finds that Yang did have the option to take a break.  *See* Tr. 138:15-16, 141:6-9

17   (Yang testified that he had no specific tasks to complete during the break and would

18   occasionally stay in the car and read the paper or take naps in the car).  At 9:30 p.m. the

19   restaurant would close and Yang would have a dinner break from 9:30 p.m. to 10:00 p.m.

20   At 10:00 p.m. Yang would leave for the night.

21   //

22
---
[3] Section 778.113 provides, in relevant part:

23   "(a) Weekly salary. If the employee is employed solely on a weekly salary basis, the regular

24   hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate.

25       (b) Salary for periods other than workweek. Where the salary covers a period longer than a workweek, such as a month, it must be reduced to its workweek equivalent.  A monthly salary is

26   subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks) . . . Once the weekly wage is arrived at, the regular

27   hourly rate of pay will be calculated as indicated above."

28   [4] $3,400 x 12 = $40,800/yr / 52 weeks = $784.61/wk / 63 hours = $12.45.
     [5] $3,400 x 12 = $40,800/yr / 52 weeks = $784.61/wk / 40 hours = $19.61.

According to this schedule, the Court finds that Yang worked a total of 8.5 hours per day, six days per week.  The Court finds that Yang is therefore entitled to 11 hours of overtime pay for each week that he worked for Shanghai Gourmet within the applicable time period.

Yang's monthly salary, including the value of room and board is calculated as follows: $1,100 in room and board per month + $1,300 guaranteed salary per month = $2,400 per month.

Based on these facts and the provisions of 29 C.F.R. § 778.113(b), the Court finds that Yang's hourly rate of pay under the FLSA was $10.85.[6]  Under California law, the Court calculates Yang's regular rate of pay at $13.84.[7]

### c. Fu's Overtime Pay

The Ninth Circuit found that the district court erred in failing to make any findings regarding Fu's wages for the period from August 2003 to August 2004, given that evidence was presented at the first trial about Fu's wages prior to August 2004.  Dkt. No. 113 at 7.

As to Fu's wages from August 2003 through August 2004, the Court finds as follows:

Fu worked in the Walnut Creek restaurant six days per week during the relevant time period.  Fu would arrive at work at 10:30 a.m., approximately one hour prior to opening as the Walnut Creek restaurant did not open until 11:30 a.m.  He would sort pastry product from 10:30 a.m. to 11:00 a.m. and then eat breakfast from 11:00 a.m. to 11:30 a.m.  He would then make dim sum until lunch was served from 2:30 p.m. to 3:00 p.m.  Fu would continue to make dim sum from 3:00 p.m. to 5:00 p.m. and would finish work at 9:30 p.m. when dinner was served.  Fu would leave the restaurant at 10:00 p.m.

According to this schedule, the Court finds that Fu worked a total of 10 hours per day, six days per week (60 hours per week).  The Court finds that Fu is therefore entitled to 20 hours of overtime pay for each week that he worked for Shanghai Gourmet within the applicable time period of August 2003 to August 2004.

---

[6] $2,400 x 12 = $28,800/yr / 52 weeks = $553.84/wk / 51 hours = $10.85.
[7] $2,400 x 12 = $28,800/yr / 52 weeks = $553.84/wk / 40 hours = $13.84.

Fu's monthly salary, including the value of room and board is calculated as follows: $1,100 in room and board per month + $2,500 guaranteed salary per month = $3,600 per month.

Based on these facts and the provisions of 29 C.F.R. § 778.113(b), the Court finds that Fu's hourly rate of pay under the FLSA was $13.84.[8]  Under California law, the Court calculates Fu's regular rate of pay at $20.76.[9]

### 2.        Violation of California Labor Code § 226.7 (Missed Meal Periods)

California Labor Code § 512(a) states that an employer must provide a meal period not less than thirty minutes for employees working more than five hours in one shift. California Labor Code § 226.7 states that: "No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission," and that "[i]f an employer fails to provide an employee a meal period or rest period in accordance with an applicable order of the Industrial Welfare Commission, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."  Cal. Lab. Code § 226.7 (2000).  Further, "[w]hen an employer directs, commands or restrains an employee from leaving the work place during his or her lunch hour and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control . . . [and ] must be paid." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 583 (2000) (quoting *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975 (1995)).  The California Supreme Court has determined, however, that in order to satisfy the requirements of § 512(a), employers are required only to provide a meal break, not to ensure that employees take that break.  "The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30–minute break, and does not impede or discourage them from doing so. . . . On the other

---

[8] $3,600 x 12 = $43,200/yr / 52 weeks = $830.76/wk / 60 hours = $13.84.
[9] $3,600 x 12 = $43,200/yr / 52 weeks = $830.76/wk / 40 hours = $20.76.

1  hand, the employer is not obligated to police meal breaks and ensure no work thereafter is

2  performed." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1040-41 (2012).[10]

3        Here, the Ninth Circuit affirmed the district court's interpretation of California's meal

4  period requirement, and this Court is satisfied that defendants provided sufficient meal

5  breaks. *See* Dkt. No. 113 at 7.  Plaintiffs are not entitled to damages for missed meal

6  periods.

7        **3.      Prejudgment Interest**

8        Under California Labor Code § 218.6, a court must "award interest on all due and

9  unpaid wages at the rate of interest specified in subdivision (b) of Section 3289 of the Civil

10  Code, which shall accrue from the date that the wages were due and payable."

11        Neither plaintiffs' nor defendants' post-trial briefs addressed the issue of prejudgment

12  interest due on unpaid wages.  The Court orders the parties to address the amount of

13  prejudgment interest that should be awarded to plaintiffs in post-trial briefings.

14        **4.      UCL Claim for Restitution**

15        In the First Amended Complaint, plaintiffs state they seek "restitution of unpaid

16  overtime pay pursuant to California Business and Professions Code § 17203."  Dkt. No. 35

17  at 10.  The parties have not addressed whether restitution is available to plaintiffs under

18  § 17203 and are ordered to do so in supplemental post-trial briefings.

19        **5.      Violation of California Labor Code § 203 (Waiting Time Penalties)**

20        California law requires the prompt payment of all wages due.  "Wages" include pay

21  for all hours worked, including overtime pay.  *See* Cal. Lab. Code § 200(a).  If an employer

22  fails to pay all wages due, California Labor Code § 203 requires payment of "waiting time

23  penalties" to the affected employees.  "If an employer willfully fails to pay, without

24  abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any

25  wages of an employee who is discharged or who quits, the wages of the employee shall

26

27  [10] As the Ninth Circuit noted, "We may consider such depublished California decisions when
construing California law, even though those decisions have no precedential value."  Dkt. No. 113

28  at 6 (citing *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir.
2003)).

1   continue as a penalty from the due date thereof at the same rate until paid or until an action

2   therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab.

3   Code § 203.

4           The language of § 203 is mandatory if the violation is willful. "A willful failure to

5   pay wages within the meaning of Labor Code Section 203 occurs when an employer

6   intentionally fails to pay wages to an employee when those wages are due. However, a

7   good faith dispute that any wages are due will preclude imposition of waiting time penalties

8   under Section 203." 8 Cal. Code Regs. § 13520. "A 'good faith dispute' that any wages are

9   due occurs when an employer presents a defense, based in law or fact which, if successful,

10  would preclude any recover [sic] on the part of the employee . . . Defenses presented which,

11  under all the circumstances, are unsupported by any evidence, are unreasonable, or are

12  presented in bad faith, will preclude a finding of a 'good faith dispute.'" *Id.*

13          In this case, the Court finds that defendants' failure to pay overtime compensation

14  was willful and that defendants have not established a good faith dispute. The Court

15  therefore orders the parties to address in further post-trial briefing the waiting time penalties

16  that should be assessed as to each plaintiff.

17          **6.    Liquidated Damages**

18          Plaintiffs also seek liquidated damages under the FLSA.[11]  An employer who violates

19  the FLSA is liable for liquidated damages equal to the amount of unpaid compensation.  29

20  U.S.C. § 216(b).  The Court has discretion to deny liquidated damages, however, if "the

21  employer shows to the satisfaction of the court that the act or omission giving rise to such

22  action was in good faith and that he had reasonable grounds for believing that his act or

23  omission was not a violation of the [FLSA]."  29 U.S.C. § 260.  "Under 29 U.S.C. § 260,

24  the employer has the burden of establishing subjective and objective good faith in its

25  violation of the FLSA." *Local 246 Util. Workers Union of Am. v. S. Cal. Edison Co.*, 83

26

27  ───────────────────────
    [11] The California Labor Code does not allow for liquidated damages for failure to pay overtime.
28  *See* Cal. Lab. Code § 1194.2(a) ("Nothing in this subdivision shall be construed to authorize the
    recovery of liquidated damages for failure to pay overtime compensation.").

F.3d 292, 297-98 (9th Cir. 1996).  Thus, defendants have the burden of establishing that they had "an honest intention to ascertain and follow the dictates of the Act" and had "reasonable grounds for believing that [their] conduct complie[d] with the Act."  *Id.* (citations omitted).  If defendants fail to carry that burden, liquidated damages are mandatory.  *See EEOC v. First Citizens Bank of Billings*, 758 F.2d 397, 403 (9th Cir. 1985).

Here, defendants' post-trial brief does not respond to plaintiffs' claim for liquidated damages.  *See* Dkt. No. 155.  Nor did defendants present sufficient evidence at trial demonstrating defendants' "honest intention to ascertain and follow the dictates of the Act" or their "reasonable grounds for believing that [their] conduct complie[d] with the Act." Plaintiffs therefore are awarded liquidated damages under the FLSA equal to their unpaid compensation.

### 7.    Attorneys' Fees and Costs

Finally, plaintiffs request reasonable attorneys' fees under California Labor Code §§ 1194(a), 2699(g) and under the FLSA, 29 U.S.C. § 216(b).  *See* 29 U.S.C. § 216(b) ("The court in such action [for recovery of unpaid wages] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); Cal. Lab. Code § 1194 ("[A]ny employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action . . . reasonable attorney's fees, and costs of suit.").  Plaintiffs have not briefed the issue of reasonable attorneys' fees and are therefore ordered to do so in post-trial briefings.

### IV. CONCLUSION

Under the *Anderson v. Mt. Clemens Pottery* test, the Court finds that plaintiffs Wang, Yang, and Fu worked in excess of forty hours per week and more than eight hours per day without being compensated for overtime, and accordingly damages, liquidated damages, and waiting time penalties are warranted under the FLSA and California law.  In addition, restitution, attorneys' fees, and prejudgment interest may be appropriate.  As discussed above, the Court requires the parties to provide the Court with additional briefing on the

following topics:  (1) the calculation of damages to be awarded to each plaintiff under the FLSA and California law, including the proper time periods for the award, given the Court's determinations in this order; (2) the amount of prejudgment interest to be assessed; (3) whether and how much restitution is proper under California Business and Professions Code § 17203; (4) the amount of waiting time penalties to be assessed; (5) the amount of liquidated damages to be assessed; (6) the amount of the reasonable attorneys' fees to be awarded; and (7) whether the judgment should be against all defendants jointly and severally, against Shanghai Gourmet LLC only, or otherwise.  On this final point, the parties must address whether further proceedings are necessary to address plaintiffs' interest in piercing the corporate veil of Shanghai Gourmet LLC.

Plaintiffs are ordered to file a supplemental trial brief (and declaration(s) where necessary to support facts) on these issues within 21 days of this order; defendants to respond within 14 days after the opening brief; plaintiffs to reply within 7 days.

Finally, if this order should provide a new opportunity for settlement, the parties may contact the Courtroom Deputy for Magistrate Judge Kandis Westmore to schedule a further Settlement Conference.

IT IS SO ORDERED.

Date: May 28, 2014

Nathanael M. Cousins
United States Magistrate Judge